# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

————————————————————

PEOPLE FOR THE ETHICAL )
TREATMENT OF ANIMALS, INC., )
 )
  Plaintiff, )
 )
  v. )  Civil Action No. 18-1137 (TFH)
 )
SONNY PERDUE, Secretary, )
U.S. Department of Agriculture, *et al.*, )
 )
  Defendants. )

————————————————————

## MEMORANDUM OPINION

People for the Ethical Treatment of Animals, Inc. (PETA) is a non-profit organization that is dedicated to protecting animals from abuse, neglect, and cruelty.  PETA brings this suit against Sonny Perdue in his official capacity as the Secretary of the Department of Agriculture (the USDA) and the Department of Agriculture itself to challenge the USDA's implementation of the Animal Welfare Act (AWA), 7 U.S.C. § 2131 *et seq.*, as it pertains to the agency's decisions to renew licenses for five animal exhibitors located in six states:  (1) The Camel Farm in Yuma, Arizona; (2) Deer Haven Mini Zoo in Keymar, Maryland; (3) Laughing Valley Ranch in Idaho Springs, Colorado; (4) Bayou Wildlife Park in Alvin, Texas; and (5) Henry Hampton, who owns the Lazy 5 Ranch in Mooresville, North Carolina and The Farm at Walnut Creek in Sugarcreek, Ohio.  PETA argues that the USDA renewed the five exhibitors' licenses despite knowing that their renewal applications contained false statements certifying that they were in compliance with the AWA's requirements.  PETA contends that the USDA's decisions to renew the exhibitors' licenses despite knowing that they contained false statements was "arbitrary, capricious, an abuse of discretion, not in accordance with law, without observance of procedure

1

required by law, and in excess of statutory jurisdiction, authority, or limitations within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), (C), (D)."  Am. Compl. [Dkt. 11] ¶ 6.

The USDA's license renewal scheme and authority to renew licenses through a purely administrative process have been challenged without success three times before in *Animal Legal Defense Fund v. USDA*, No. 13-20076, 2014 WL 11444100 (S.D. Fl. March 25, 2014), *aff'd* 789 F.3d 1206 (11th Cir. 2015); *People for the Ethical Treatment of Animals, Inc. v. USDA*, 194 F. Supp. 3d 404 (E.D.N.C. 2016), *aff'd* 861 F.3d 502 (4th Cir. 2017); and *Animal Legal Defense Fund v. Vilsack*, 169 F. Supp. 3d 6 (D.D.C. 2016), *aff'd in part and remanded in part sub. nom. Animal Legal Defense Fund v. Perdue*, 872 F.3d 602 (D.C. Cir. 2017).  These decisions make clear that, while PETA may not challenge the USDA's overall process for approving license renewals, individual renewal decisions are reviewable.  Upon such review, this Court will grant in part and deny in part the USDA's motion to dismiss.

## I.   BACKGROUND

The AWA was enacted "to insure that animals intended for use in research facilities or for exhibition purposes or for use as pets are provided humane care and treatment."  7 U.S.C. § 2131(1).  The AWA requires the USDA to set standards for "humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors."  *Id*. § 2143(a)(1). The USDA is also required to issue licenses to exhibitors once that exhibitor has "demonstrated that his facilities comply with the standards."  *Id*. § 2133.  Exhibitor licenses expire annually and must be renewed to permit the exhibit to remain open.  9 C.F.R. § 2.5(b).  To renew a license, an exhibitor must (1) pay the annual license fee, (2) submit an annual report, (3) be available for inspection, and (4) certify compliance with the requirements of the AWA.  *Id*. §§ 2.1(d)(1), 2.3(a), 2.7.  The statute and regulations also authorize the USDA to conduct unannounced

inspections and issue citations, revoke, or suspend licenses for noncompliance with the human standards. *Id*. § 2.3(a), 2.12.

PETA "solicits and investigates complaints about animal cruelty submitted by the public" and "routinely sends submissions to the government concerning the treatment of captive animals." Am. Compl. ¶ 16.  In furtherance of this mission, PETA monitored the wildlife exhibited by the five exhibitors at issue in this litigation. *Id*. ¶ 18.  PETA alleges that before and immediately after these exhibitors applied to renew their licenses the USDA issued citations to them for violating the applicable standards:

- The USDA cited The Camel Farm for thirty-three violations from March 7, 2017 to November 8, 2017. *Id*. ¶ 68.  The Camel Farm nevertheless certified compliance with the AWA when it applied to renew its license on or before December 6, 2017. *Id*. ¶ 66. Although the USDA renewed the license, *id*. ¶ 73, it cited The Camel Farm for two new violations and eight repeat violations less than a month later on February 6, 2018, *id*. ¶ 75.

- The USDA cited Deer Haven for seventy-seven violations from January 18, 2017 to October 26, 2017. *Id*. ¶ 83.  Deer Haven nevertheless certified compliance with the AWA when it applied to renew its license on or before January 14, 2018. *Id*. ¶ 81.  The USDA renewed the license, *id*. ¶ 88, but issued seven additional citations on January 30, 2018, *id*. ¶¶ 89-90.

- The USDA cited Laughing Valley for twelve violations from February 22, 2017 to December 11. 2017. *Id*. ¶ 98.  Laughing Valley nevertheless certified compliance with the AWA when it applied to renew its license on or before December 20, 2017. *Id*. ¶ 96.

The USDA renewed the license, *id.* ¶ 103, but cited Laughing Valley for five violations, including three repeat violations, on March 1, 2018, *id.* ¶ 104.

- The USDA cited Bayou Wildlife Park for forty-two violations from April 7, 2017 to October 24, 2017.  *Id.* ¶ 112.  Bayou Wildlife Park nevertheless certified compliance with the AWA when it applied to renew its license on or before December 29, 2017.  *Id.* ¶ 110. The USDA renewed the license, *id.* ¶ 118, but cited Bayou Wildlife Park for eleven violations, including one repeat violation, two months later on February 28, 2018, *id.* ¶ 119.

- The USDA cited Lazy 5 Ranch for three repeat violations on both March 21, 2017 and March 23, 2017.  *Id.* ¶ 136.  Lazy 5 Ranch nevertheless certified compliance with the AWA when it applied to renew its license on or before August 13, 2017.  *Id.* ¶ 126.  The USDA renewed the license, *id.* ¶ 140, but cited Lazy 5 Ranch for five repeat violations ten days later on August 23, 2017, *id.* ¶ 141.

- The USDA cited The Farm at Walnut Creek for fourteen violations between November 14, 2016 and March 22, 2017.  *Id.* ¶ 128.  The Farm at Walnut Creek nevertheless certified compliance with the AWA when it applied to renew its license on or before August 13, 2017.  *Id.* ¶ 126.  The USDA renewed the license, *id.* ¶ 132, but cited The Farm at Walnut Creek for four repeat violations a month later on September 6, 2017, *id.* ¶ 133.

PETA alleges that when the USDA approved the exhibitors' renewal applications it was aware that it had recently cited them for violations, including repeat violations.  PETA therefore filed this action challenging the USDA's decisions to renew the licenses for all five exhibitors at the above six locations.  *See* Compl. [Dkt. 1]; Am. Compl. [Dkt. 11].  The USDA moves to

dismiss on the grounds that the Court lacks subject matter jurisdiction because PETA cannot establish constitutional standing, PETA's lawsuit is barred by collateral estoppel, and PETA must join the exhibitors as parties if the Court allows the lawsuit to proceed.  *See* Defs.' Mot. to Dismiss Pl.'s First Am. Compl., or, in the Alternative, to Join Required Parties [Dkt. 12] at 2-3. The USDA's motion is now ripe for review.[1]

The Court requested supplemental briefing on April 6, 2020.[2]  In response, the parties informed the Court that:  (1) Deer Haven is no longer operating; (2) the USDA is engaged in active enforcement proceedings against Laughing Valley Ranch, Lazy 5 Ranch, and The Farm at Walnut Creek; and (3) the USDA is engaged in active enforcement review of Camel Farm. USDA Suppl. at 3, 5; PETA Suppl. at 5 n.4.  The Court heard oral argument via teleconference on April 16, 2020.

## II.    LEGAL STANDARD

### A.  Standard of Review for Motion to Dismiss under Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure "challenges the court's power to hear a case."  *Badgett v. District of Columbia*, 925 F. Supp. 2d 23, 28 (D.D.C. 2013).  And it is well established that a lack of standing pursuant to Article III of the United States Constitution deprives a court of subject matter jurisdiction.  *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42 (1986); *O'Shea v. Littleton*, 414 U.S. 488, 493-95 (1974).

---

[1] Defs.' Mot. to Dismiss Pl.'s First Am. Compl., or, in the Alternative, to Join Required Parties [Dkt. 12]; Pl.'s Opp'n to Defs.' Mot. to Dismiss Pl.'s First Am. Compl. (Opp'n) [Dkt. 13]; Defs.' Reply in Supp. of Mot. to Dismiss, or, in the Alternative, to Join Required Parties [Dkt. 14].

[2] Defs.' Suppl. Br. in Resp. to the Court's April 6, 2020 Order (USDA Suppl.) [Dkt. 20]; Pl.'s Suppl. Br. in Opp'n to Defs.' Mot. to Dismiss Pl.'s First Am. Compl. (PETA Suppl.) [Dkt. 21].

A 12(b)(1) motion asserting that constitutional standing is insufficient "may raise either a 'facial' or a 'factual' challenge to the [plaintiff's] claim of subject matter jurisdiction." *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006). When a defendant raises a facial challenge, as is the case here, "the court may consider the complaint standing alone" or "the complaint supplemented by undisputed facts evidenced in the record. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). In either case, the Court must treat "the undisputed facts within or outside the pleadings as true," *id.*, and draw "all reasonable inferences" in the plaintiff's favor, *Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir. 2017). The plaintiff bears the ultimate burden to establish subject matter jurisdiction. *Id.*

### B.   Standard of Review for Motion to Dismiss Under Rule 12(b)(6)

When a party invokes Rule 12(b)(6) to challenge a complaint for failing to state a claim for relief pursuant to Rule 8, the Court must assess the complaint to determine whether it contains sufficient facts that, when accepted as true, evidence a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rule 8 mandates that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal

6

conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678. "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006).

## III.   ANALYSIS

The USDA first moves to dismiss on the ground that the Court lacks subject matter jurisdiction because PETA suffered no injury sufficient to establish standing. The USDA also asks for dismissal under the theory of collateral estoppel because the legal questions raised by PETA were previously decided. Finally, the USDA moves to join the exhibitors as necessary parties.

### A.  Standing

"Because Article III limits the constitutional role of the federal judiciary to resolving cases and controversies, a showing of standing is an essential and unchanging predicate to any exercise of [the Court's] jurisdiction." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 11 (D.C. Cir. 2011) (internal quotation marks omitted). "As an organization, PETA can assert standing on its own behalf, on behalf of its members or both." *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015) (internal quotation marks omitted). In this case, PETA asserts only organizational standing on its own behalf. *See* Opp'n at 7-23.

The USDA argues that PETA lacks Article III organizational standing because it cannot articulate a cognizable injury. PETA counters by listing the following injuries that it suffered as a result of the USDA's practice of renewing exhibitor licenses despite knowing that the exhibitors were continuing to violate the AWA: (1) resources spent "documenting and assessing the conditions of the animals held by the licensees at issue in this case," Opp'n at 10; (2)

resources spent raising complaints with the USDA regarding these licensees both before, and in response to, license renewals; (3) resources diverted from other "animal protection projects" to challenge the license renewals, *id*. at 11; (4) resources spent to educate the public about the USDA's practices.

To establish organizational standing a plaintiff must have suffered a "concrete and demonstrable injury to [its] activities—with a consequent drain on [its] resources—constituting more than simply a setback to the organization's abstract social interests." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982)). A court "ask[s], first, whether the agency's action or omission to act injured the organization's interest and, second, whether the organization used its resources to counteract that harm." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (citing *People for the Ethical Treatment of Animals (PETA) v. USDA*, 797 F.3d 1087, 1094 (D.C. Cir. 2015)). To establish a qualifying injury to its organizational interests, "an organization must allege that the defendant's conduct perceptibly impaired the organization's ability to provide services." *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015). A perceptible impairment inhibits the organization's "daily operations." *PETA*, 797 F.3d at 1094. "Furthermore, an organization does not suffer an injury in fact where it 'expends resources to educate its members and others' unless doing so subjects the organization to 'operational costs beyond those normally expended.'" *Food & Water Watch*, 808 F.3d at 920 (quoting *Nat'l Taxpayers Union*, 68 F.3d at 1434).

As an organization "dedicated to protecting animals from abuse, neglect, and cruelty," PETA's daily operations include "public education, cruelty investigations, research, animal rescue, . . . , and protest campaigns." Am. Compl. ¶ 15. Some specific types of actions

undertaken by PETA on a regular basis include "advocating on behalf of animals under for

exhibition and entertainment," "investigat[ing] complaints about animal cruelty submitted by the

public," "disseminat[ing] information to its members and the public about government actions

affecting animals," "send[ing] submissions to the government concerning the treatment of

captive animals," and "respond[ing] to requests for public comment from the government

concerning animal welfare issues." *Id.* ¶ 16.  PETA alleges the USDA's decisions to renew the

five exhibitors' licenses, despite knowing that the exhibitors were not complying with the AWA,

inhibited its ability to conduct its regular activities, including advocating on behalf of the

exhibited animals and investigating complaints regarding the renewed exhibitors.  PETA also

alleges that the USDA's license renewals harms its daily activity of educating the public about

the existence of exhibitors who violate the AWA.  *Id.* ¶ 21.  PETA regularly informs its members

and the public which exhibitors are violating the AWA.  When the USDA renews licenses

despite knowledge that the exhibitors are committing AWA violations, it "creates the

misperception among the public . . . that these facilities are treating animals in their possession

lawfully and humanely," inaccurately contradicts PETA's own reporting, and requires PETA to

update its reporting.  *Id.*

The USDA argues that PETA's alleged injury is insufficient to establish organizational

standing because it is merely a frustration of efforts and implicates voluntary strategic decisions

about how to distribute its resources, not an inhibition of PETA's daily operations.  An

organization's injury must be more than a mere frustration of efforts; it must impair the ability of

the organization to provide services.  *Nat. Treasury Emps. Union v. United States*, 101 F.3d

1423, 1429 (D.C. Cir. 1996) (quoting *Nat. Taxpayers Union*, 68 F.3d at 1433) ("We, of course,

recognize that conflict between a defendant's conduct and an organization's mission is alone

insufficient to establish Article III standing.  Frustration of an organization's objectives 'is the type of abstract concern that does not impart standing.'").

PETA describes regular activities undertaken in support of its mission to protect animals that are hindered by the USDA's renewal of the challenged exhibitor licenses, not merely a frustration of its efforts.  PETA submits complaints to government agencies, including the USDA, and specifically submitted complaints regarding the exhibitors challenged here.  Am. Compl. ¶¶ 18-19.  PETA alleges that the USDA's renewal of licenses despite knowledge of noncompliance with the AWA ignores PETA's complaints about the exhibitors and "significantly limits the effectiveness of PETA's normal process of submitting complaints to the USDA."  *Id.* ¶ 19.  PETA provides a service to its members and the exhibited animals by highlighting mistreatment; when the USDA ignores its knowledge of animal mistreatment and renews exhibitor licenses anyway, USDA impairs PETA's ability to protect the exhibited animals.

The Supreme Court in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), held that "concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests."  *Id.* at 379.  The Court finds PETA has alleged more than a mere "setback to the organization's abstract social interests."  *Id.*  PETA does not allege only that the USDA's actions are harming animals and its mission is to prevent the mistreatment of animals. PETA points directly to the complaints submitted as part of its daily activities regarding the challenged exhibitors and alleges that the auto-renewal of those licenses essentially negated PETA's efforts to protect the animals and reduced the effectiveness of its regular activities, notably the issuance of complaints to the USDA regarding violations of the AWA.

As a result of the USDA's renewal of the licenses, PETA was forced to expend additional resources to submit new complaints about the exhibitors' AWA violations. By renewing exhibitor licenses despite noncompliance with the AWA, the USDA "increase[s] the number of animals that are exhibited under unlawful conditions and are subjected to inhumane care and treatment, and thereby compels PETA to spend more resources detecting, disclosing, educating the public about, and bringing to the agency's attention, these non-compliant facilities." Am. Compl. ¶ 17. If the USDA did not renew license for any exhibitors that had a history of known AWA violations and prior PETA complaints, then PETA's initial and regular efforts to submit complaints regarding AWA violations would not be impaired, and it would not continue to expend resources highlighting the mistreatment of animals by the same exhibitors.

In *PETA v. USDA*, 797 F.3d 1087 (D.C. Cir. 2015), PETA satisfied the requirements of organizational standing because it was injured by the USDA's "failure to apply the AWA's general animal welfare regulations to birds," which harmed PETA through "a lack of redress for its complaints and a lack of information for its membership." *Id.* at 1095. Comparably, PETA alleges here that the USDA's blind renewal of exhibitor licenses negates, or creates "a lack of redress for," its complaints against these exhibitors and reduces the reliability of information available to its membership about the exhibitors because the renewal itself creates the implication that the exhibitors are complying with the AWA despite the USDA and PETA's knowledge that they are not.

PETA's daily activities are hampered by the USDA's disregard for PETA's prior complaints and evidence of AWA violations related to the challenged exhibitors. PETA specifically notified the USDA of violations from these exhibitors in an effort to protect the animals located at those facilities. The USDA's decisions to renew the licenses despite

knowledge of the violations impairs PETA's ability to protect the specific animals located at the challenge exhibitions.  As a result of that injury, PETA expends resources to continue to monitor and file additional complaints about those exhibitors.  Therefore, PETA satisfies the requirements for organizational standing and may challenge the USDA's renewal decisions.[3, 4]

### B.  Collateral Estoppel

The USDA also argues that the issues raised by PETA were previously decided by District Courts in the Eastern District of North Carolina and the Southern District of Florida and those decisions were affirmed on appeal by the Fourth and Eleventh Circuits respectively;

---

[3] The Court also notes that the Eastern District of North Carolina found PETA had "sufficiently alleged injury to support standing to sue" in a comparable case without detailed analysis.  *PETA v. USDA*, 194 F. Supp. 3d at 409 n.2.

[4] "A plaintiff's standing to sue under a statute ordinarily includes both constitutional and prudential components."  *Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011).  To secure judicial review under the APA and demonstrate prudential standing, PETA must show that the injuries it asserts fall within the "zone of interests" of the AWA.  *ALDF v. Espy*, 23 F.3d 496, 498 (D.C. Cir. 1994).  "[T]o come within the zone of interests of the statute under which suit is brought, an organization must show more than a general corporate purpose to promote the interests to which the statute is addressed"; it must also "show a congressional intent to benefit the organization or some indication that the organization is 'a peculiarly suitable challenger of administrative neglect.'"  *Id.* at 503 (quoting *Hazardous Waste Treatment Council v. EPA*, 861 F.2d 277, 283 (D.C. Cir. 1988), *cert. denied*, 490 U.S. 1106 (1989)).  Our circuit has further explained that "[t]his analysis focuses, not on those who Congress intended to benefit, but on those who in practice can be expected to police the interests that the statute protects."  *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1075 (D.C.Cir.1998).  PETA's mission is to protect animals from abuse, neglect, and cruelty.  Am. Compl. ¶ 15.  In support of this mission, PETA investigates complaints, advocates on behalf of animals, and informs the public about government action affecting animals.  The animals protected by the AWA are "uniquely incapable of defending their own interests in court," and PETA, as a group dedicated to protecting animals' interests, is one organization who might be expected to police animals' interests under the AWA, thereby satisfying the "zone of interests" test for prudential standing.  *Animal Welfare Inst. v. Kreps*, 561 F.2d 1002, 1007 (D.C. Cir. 1977) ("Where an act is expressly motivated by considerations of humaneness toward animals, who are uniquely incapable of defending their own interests in court, it strikes us as eminently logical to allow groups specifically concerned with animal welfare to invoke the aid of the courts in enforcing the statute.").

therefore, PETA's claims are barred by collateral estoppel.  PETA differentiates those cases from

this one by focusing on the individual exhibitors' renewal decisions that are being challenged

here.  PETA argues that collateral estoppel is inappropriate because no court has issued a

decision addressing these specific renewal decisions.

Collateral estoppel—also known as issue preclusion—dictates that "'once a court has

decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation

of the issue in a suit on a different cause of action involving a party to the first case.'"  *Yamaha

Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen v. McCurry*,

449 U.S. 90, 94 (1980)).  Collateral estoppel applies if three criteria are met:  (1) if in the prior

litigation, the issue was "actually litigated, that is, contested by the parties and submitted for

determination by the court"; (2) if the prior litigation was "actually and necessarily determined

by a court of competent jurisdiction"; and (3) if "preclusion in the second trial [does] not work

an unfairness."  *Otherson v. DOJ*, 711 F.2d 267, 273 (D.C. Cir. 1983); *see also Fogg v. Ashcroft*,

254 F.3d 103, 111 (D.C. Cir. 2001) ("When an issue of fact or law is actually litigated and

determined by a valid and final judgment, and the determination is essential to the judgment, the

determination is conclusive in a subsequent action between the parties, whether on the same or a

different claim."); *Yamaha*, 961 F.2d at 254 ("[P]reclusion in the second case must not work a

basic unfairness to the party bound by the first determination.").  Collateral estoppel applies

when the earlier decision on a specific issue was reached by a different court.  *See Yamaha*, 961

F.2d at 258 ("The doctrine of issue preclusion counsels us against reaching the merits of this

case, regardless of whether we would reject or accept our sister circuit's position.").

The USDA argues that prior decisions by the Southern District of Florida and Eleventh

Circuit and the Eastern District of North Carolina and Fourth Circuit preclude a decision by this

Court.  PETA responds that the specific issues raised in this case are whether renewal decisions made after those earlier decisions were arbitrary and capricious, not whether the renewal process the USDA uses is proper.  The Court will begin by summarizing the previous holdings and will then compare the issues decided in those cases to those presented here.

In 2014, Judge Lenard of the Southern District of Florida dismissed the Animal Legal Defense Fund's (ALDF) complaint against the USDA, which challenged the USDA's renewal of an exhibitor license for the Miami Seaquarium.  *ALDF v. USDA*, 2014 WL 11444100, at *8.  The ALDF challenged the USDA's pattern and practice of renewing the Seaquarium's license and the renewal itself as "arbitrary and capricious, an abuse of discretion, and not in accordance with law" under the APA.  *Id*. at *1.  Judge Lenard found that the AWA was silent about the requirements for exhibitor renewals and the USDA's regulations were permissible.  *Id*. at *8 ("Because the USDA's regulations are not 'arbitrary, capricious, or manifestly contrary to the statute,' they are entitled to 'controlling weight.'").  Finally, the court held that "because the USDA's decision to renew the Seaquarium's license was made pursuant to a valid administrative regulation . . . it was not an unlawful agency action under the APA."  *Id*.  The Eleventh Circuit affirmed Judge Lenard's decision:

> USDA's licensing regulations constitute a reasonable policy choice balancing the conflicting congressional aims of due process and animal welfare, and the AWA licensing scheme is entitled to deference by this court. . . .  [A]ssuming Seaquarium violated a substantive AWA standard, the remedy in this case lies not in the administrative license renewal scheme, but in USDA's power to initiate an enforcement proceeding.

*ALDF v. USDA*, 789 F.3d at 1210.

In 2016, Chief Judge Dever III of the Eastern District of North Carolina dismissed a similar case that PETA brought against the USDA, challenging the USDA's "license-renewal

process for animal exhibitions," as well as specific renewal decisions. *PETA v. USDA*, 194 F.

Supp. 3d at 407.  Chief Judge Dever held that:

> the AWA does not prohibit the USDA's administrative renewal
> process for exhibitor licenses.  Rather, the USDA had discretion to
> promulgate the renewal regulations challenged here.  The USDA did
> not act arbitrarily or capriciously, abuse its discretion, exceed its
> statutory jurisdiction, authority, or limitations, or otherwise violate
> the APA when it granted exhibitor license renewals in accordance
> with those regulations.

*Id*. at 415 (internal quotation marks omitted).  The Fourth Circuit, noting and agreeing with the

Eleventh Circuit's decision in *ALDF v. USDA*, affirmed.  *PETA v. USDA*, 861 F.3d at 512.

In both cases, the courts held that the USDA's renewal procedure was permitted by

statute and did not violate the APA.  Importantly here, where the only challenge is to specific

renewal decisions and not the USDA's overall renewal policy, both prior cases also held that the

individual renewal decisions being challenged did not violate the APA and were not arbitrary

and capricious because they were made pursuant to a valid administrative regulation.  *See ALDF

v. USDA*, 2014 WL 11444100, at *8; *PETA v. USDA*, 194 F. Supp. 3d at 415.  Therefore, while

PETA is correct that no court has ruled on the validity of the USDA's renewal decisions with

respect to these individual exhibitors, at least two prior courts have held that the USDA may

renew exhibitor licenses through a purely administrative process and that renewal decisions

made consistent with that process do not violate the APA.

The D.C. Circuit, however, has also considered the USDA's exhibitor license renewal

process and, although it similarly held that the process complied with the statute, it nonetheless

reached a different result from the Fourth and Eleventh Circuits about how to approach

reviewing the individual renewal decisions.  *See ALDF v. Perdue*, 872 F.3d 602, 607 (D.C. Cir.

2017).  In *ALDF*, the D.C. Circuit considered on appeal whether the District Court correctly held

that the plaintiff's complaint should be dismissed because the USDA's regulations set forth a

lawful renewal procedure under the APA that left the agency no discretion about implementing the renewal process and, so long as an exhibitor satisfied the regulation's enumerated criteria, the decision to renew an exhibitor's license was not arbitrary, capricious, or an abuse of discretion. *Id*. at 606-07.  Although the D.C. Circuit agreed with and affirmed the District Court's conclusion with respect to the renewal system as a whole, it remanded the question of whether the specific license renewal decision complied with the APA and directed the District Court to likewise remand to the agency to develop the record on this issue.  *Id.* at 607.  The D.C. Circuit explained that "[t]he mere fact that a regulatory scheme is generally consistent with the agency's authorizing statue does not shield each agency action taken under the scheme from arbitrary and capricious review."  *Id*. at 619.  The D.C. Circuit cautioned that, although the USDA's decision to renew the relevant license was based on the fact that the exhibitor met the four criteria for renewal by filing an annual report, paying the renewal fee, making itself available for inspection, and self-certifying compliance with the AWA, the agency's decision to grant renewal nevertheless could still be arbitrary and capricious if it "runs counter to the evidence before the agency."  *Id*.

In *ALDF* the plaintiff alleged, as PETA does here, that in a "smoking gun" case it is unreasonable for the USDA to rely on an exhibitor's self-certification of compliance when the agency itself knows, based on prior and ongoing violations, that the certification is false. PETA's allegations regarding the five exhibitors here tell a very similar story to the one relayed by the plaintiff in *ALDF*.  Each exhibitor has a history of persistent noncompliance and, very soon after their licenses were renewed, each exhibitor was again cited for further noncompliance. Based on similar facts, the D.C. Circuit held in *ALDF* that the agency must "at a minimum,

explain how its reliance on the self-certification scheme in this allegedly 'smoking gun' case did

not constitute arbitrary and capricious action" and warned:

> Should the agency choose to reissue its license renewal decision or
> to maintain its position that it may rely on a license renewal
> applicant's self-certification to demonstrate compliance, even with
> it has concrete evidence that the applicant is routinely and currently
> out of compliance with AWA standards, the District Court may not
> uphold that action unless it finds that USDA acted rationally and
> engaged in reasoned decisionmaking.

*Id*. at 620.

As ALDF demonstrates, the D.C. Circuit departed from the Fourth and Eleventh Circuits

approaches to the extent that the plaintiff's alleged facts indicate that an exhibitor persistently

violated the AWA but the USDA granted a license renewal anyway.  And that is the case here.

The Court agrees with the USDA that its license renewal system as a whole is consistent with the

AWA and has been upheld by the Fourth, Eleventh, and D.C. Circuits.  However, PETA is

alleging that the specific license renewal decisions at issue in this case are arbitrary and

capricious because they are "smoking gun" cases where the agency knew that the exhibitor's

self-certifications were false based on their persistent violations of the AWA both before and

after the license was renewed.  Because the D.C. Circuit has held that in these "smoking gun"

cases the District Court must evaluate the individual renewal decisions, the Court will deny the

USDA's motion to dismiss due to collateral estoppel.

The parties indicated during the oral arguments that the USDA's record regarding the

renewal decisions challenged in this case is sufficient for the Court to evaluate them without

requiring immediate remand.  PETA also stated that it intends to move for leave to further amend

the complaint to include the most recent USDA decisions granting license renewals to the

challenge exhibitors.  The Court will permit PETA to file a motion for leave to amend and set an

appropriate summary judgment briefing schedule after that pending motion is decided.

### C.  Mootness of Count Two - Deer Haven

Both parties indicated in supplemental briefing and during the teleconference hearing the Court held on April 16, 2020 that since the litigation was filed Deer Haven voluntarily gave up its exhibitor license and closed.  *See* USDA Suppl. at 5; PETA Suppl. at 4 n.5.  The USDA argues that the closure moots PETA's claim as to Deer Haven, while PETA argues that the claim is not mooted because PETA seeks a declaratory judgment and the challenged action is capable of repetition yet evading review.

Mootness occurs when "'the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated' in circumstances where 'it becomes impossible for the court to grant any effectual relief whatever to the prevailing party.'"  *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)).  Exceptions to the mootness doctrine permit a court to review an action (1) if plaintiff "seeks declaratory relief as to an ongoing policy"[5] or (2) "even though the specific action that the plaintiff challenges has ceased, a claim for declaratory relief will not be moot even if the 'plaintiff has made no challenge to an ongoing underlying policy, but merely attacks an isolated agency action,' so long as 'the specific claim fits the exception for cases that are capable of repetition, yet evading review, or falls within the voluntary cessation doctrine.'"  *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009) (quoting *City of Houston, Tex. v. Dep't of Housing & Urban Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994)).  A claim is capable of repetition yet evading review if (1) the duration of the challenged action is

---

[5] This exception is not applicable because PETA does not challenge the underlying policy, but instead challenges specific renewal decisions.

too short to be fully litigated and (2) "there is a reasonable expectation that the same complaining party would be subjected to the same action again." *Id*. at 322.

In this action, PETA challenges an annual license renewal of Deer Haven and other exhibitors.  Because each renewal only lasts one year, a challenge to a renewal decision cannot be fully litigated before the expiration of that decision.  *See id*.  Where PETA's argument fails is the second step.  The Court must identify what must be repeatable in order to save the case from mootness.  The D.C. Circuit has explained that the Court must consider what "wrong," raised by the plaintiff, "is, or is not, capable of repetition."  *Id*. at 323 (citing *PETA v. Gittens*, 396 F.3d 416, 422-23 (D.C. Cir. 2005).

Like in *Del Monte*, where the harm was a denial of a one-year license and there was a reasonable expectation that Del Monte itself would be subject to the same action again, the "wrong" alleged in this case is the renewal of Deer Haven's exhibitor license despite the USDA's knowledge of AWA violations.  However, given the factual proffers made by both parties, the Court does not find that there is a "reasonable expectation" that Deer Haven's exhibitor license will be renewed under similar challenged circumstances.  For that to occur, Deer Haven would need to reopen, demonstrate compliance with the AWA to get a new license, violate the AWA, and have its license renewed despite those violations.  Any possibility of such action is too speculative and does not support a "reasonable expectation" of repetition.  The Court will dismiss Count Two of the Amended Complaint as moot due to Deer Haven's voluntary termination of its license and closure.

### D.  Joinder

The USDA also asks the Court to require the five exhibitors whose license renewals are being challenged by PETA to be joined as necessary parties under Federal Rule of Civil

Procedure 19(a)(1)(B).  The first step to determine if joinder is appropriate is to decide if the

non-party is necessary.  Rule 19(a) describes a necessary party:

> (1) Required Party. A person who is subject to service of process
> and whose joinder will not deprive the court of subject-matter
> jurisdiction must be joined as a party if:
> . . .
>  (B) that person claims an interest relating to the subject of the action
> and is so situated that disposing of the action in the person's absence
> may:
> (i) as a practical matter impair or impede the person's ability to
> protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring
> double, multiple, or otherwise inconsistent obligations because of
> the interest.

Fed. R. Civ. P. 19(a).  The USDA argues that the exhibitors claim an interest in the action

because their licenses could be stripped without their ability to challenge the decision.

Specifically, the USDA believes the exhibitors should be able to explain their compliance with

the AWA.  PETA challenges the exhibitors' interest in the action, noting no exhibitors have

come forward to express an interest to be joined and their interests will be represented by the

agency.

The current action challenges the USDA's decisions to renew licenses as arbitrary and

capricious.  The Court does not find that the exhibitors are a necessary party under Rule 19.  To

determine whether the USDA's decisions to renew the licenses were arbitrary and capricious, the

Court will review the record before the agency and its reasoning for each decision.  The Court

must not determine whether the exhibitors were actually in compliance with the AWA, because

it is not the actions of the exhibitors that are at issue, but the reasoning and understanding of the

agency when it renewed the licenses.

Additionally, the exhibitors' interests will be fully represented by the USDA because

they are aligned in their desire to uphold the decision to renew the licenses.  *See Ramah Navajo*

*Sch. Bd., Inc. v. Babbitt*, 87 F.3d 1338, 1351 (D.C. Cir. 1996) ("If the nonparties' interests are adequately represented by a party, the suit will not impede or impair the nonparties' interests, and therefore the nonparties will not be considered necessary."); *Fed. Deposit Ins. Corp. (FDIC) v. Bank of N.Y.*, 479 F Supp. 2d 1, 10 (D.D.C. 2007), *aff'd,* 508 F.3d 1 (D.C. Cir. 2007) ("It is well settled that adjudicating an absent person's claim cannot impair or impede the person's ability to protect his interest if he is adequately represented by one of the existing parties."). There is no conflict between the USDA and the non-party exhibitors, therefore, the USDA may adequately represent the exhibitors' interest and they are not necessary parties.

The USDA also argues that exhibitors are necessary under Rule 19(a)(2)(ii) because it could be subject to inconsistent obligations if the Court vacates its license renewal decisions and requires the USDA to revoke the licenses. The AWA provides a specific process for revoking an exhibitor's license, which includes a provision for the exhibitor to be heard before a final decision, and the USDA argues that revocation by court order would be inconsistent with the AWA and; therefore could trigger additional lawsuits from the exhibitors. However, "the possibility of being subject to multiple or inconsistent obligations must be real, and not a mere possibility." *FDIC*, 479 F. Supp. 2d at 12. And "the mere risk of potential litigation is not enough to require joinder." *16th & K Hotel, LP v. Commonwealth Land Title Ins. Co.*, 276 F.R.D. 8, 16 (D.D.C. 2011). The possibility that the USDA will be subject to suit by exhibitors if their licenses are revoked is too speculative to justify joinder.[6]

---

[6] The USDA also incorrectly notes that PETA seeks revocation of the licenses at issue. PETA's complaint specifically asks (1) for a declaration that the USDA acted arbitrarily and capriciously in making the renewal decisions and (2) for the court to set aside the renewal decisions. Because the renewal decisions challenged in this lawsuit have now likely been superseded by later renewal decisions, the effect of setting aside an expired renewal may not be to rescind the license entirely, making the potential for inconsistent obligations by the USDA even more speculative.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be granted in part and denied in part.  A memorializing Order accompanies this Memorandum Opinion.


Date: May 29, 2020

_____
THOMAS F. HOGAN
United States District Judge